38 So.2d 287

### SMITH v. STATE.

4 Div. 83.

Court of Appeals of Alabama.
Dec. 14, 1947.

Application for Rehearing Dismissed
Jan. 4, 1949.

John C. Walters, of Troy, for appellant.

A. A. Carmichael, Atty. Gen., and Thos. F. Parker, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This appellant was indicted for and by a jury found guilty of grand larceny. As punishment the court sentenced him to the State penitentiary for a term of eight years.

Abundant evidence was introduced by the State, which if believed by the jury under the required rule tended to show that this appellant stole a sewing machine head, the property of the Houston County Board of Education, from the Rehobeth High School in Houston County, Alabama.

In his motion for a new trial one of the grounds asserted by this appellant was that he was not represented by counsel in the trial below "under the definition of the United States Supreme Court."

Testimony in connection with this ground of appellant's motion tends to show that appellant was visited by Mr. W. G. Harwick a reputable and competent attorney of Dothan several times while he was confined in the Houston County jail.

Mr. J. C. White, the jailer, testified that at the time of the hearing of a petition for a writ of habeas corpus filed in appellant's behalf, appellant and Mr. Hardwick "disagreed on the legal procedure to be had in that case and Mr. Hardwick then withdrew from the case and made known to the court at the time that Mr. Smith stated to him that he had knowledge of the procedure and desired a different procedure from that which Mr. Hardwick wanted to pursue."

According to Mr. White the appellant was free to receive visitors at all times during his confinement, and was also free to write to whom he pleased, except that he was limited to one letter a week to his wife after interception of a letter from appellant to his wife in which he sought to have his wife make way with the machine head held by the State as evidence in this case.

Mr. H. E. Cameron, Chief Deputy Sheriff of Houston County, gave testimony similar

to that of Mr. White, and further testified that this appellant had told him that he had read and studied law a year and a half while in a federal penitentiary.

It also appears that the appellant wrote out in long hand the motion for a new trial in this case. The same was later typed for him, and after a minor correction by appellant was filed. Appellant also filed an assignment of errors. Upon suggestion of the Solicitor the assignment of error was considered as part of the motion for a new trial.

The appellant then stated "The assignment was filed under the federal court practice requiring assignment of errors."

The 5th error assigned by appellant which by the court was treated as a part of the motion for a new trial was as follows:

"5. The defendant was tried without counsel; denied the right to retain counsel of his own choosing; denied the right to secure witnesses in his own behalf."

Examination of the evidence submitted fully justifies the lower court's conclusion that appellant's assertion that he was denied the right to retain counsel of his own choosing, and was denied the right to secure witnesses and evidence in his own behalf was without merit. It is our opinion that the evidence tends fully to establish just the opposite, and that this appellant was in no way denied either right or in any way impeded in the reasonable exercise of such rights.

It is also our conclusion that this appellant's background, and his shown competence, and the circumstances of this case, completely negatives his contention that his rights under the Due Process Clause of the 14th Amendment to the United States Constitution have been invaded because he was not represented by counsel in the trial below.

In Bute v. People of State of Illinois, 333 U.S. 640, 68 S.Ct. 763, 776, 92 L.Ed. 986, Mr. Justice Burton writing the majority opinion stated the federal constitutional requirement for counsel as follows:

"In reviewing the situation further, in 1942, this Court, in Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595, indicated that it did not regard it to be a violation of the Fourteenth Amendment for a Maryland trial court to refuse to appoint counsel to represent an indigent defendant charged with robbery under the circumstances of that case. We there stated the general principle as follows:

" 'The due process clause of the Fourteenth Amendment does not incorporate, as such, the specific guarantees found in the Sixth Amendment although a denial by a state of rights or privileges specifically embodied in that and others of the first eight amendments may, in certain circumstances, or in connection with other elements, operate, in a given case, to deprive a litigant of due process of law in violation of the Fourteenth. * * * Asserted denial (of counsel) is to be tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial. In the application of such a concept, there is always the danger of falling into the habit of formulating the guarantee into a set of hard and fast rules, the application of which in a given case may be to ignore the qualifying factors therein disclosed.' Id., at pages 461, 462, of 316 U.S., at page [1252], 1256 of 62 S.Ct., 86 L.Ed. 1595 [1601, 1602].

"If, in the face of these widely varying state procedures, this Court were to select the rule contended for by the petitioner and hold invalid all procedure not reaching that standard, it not only would disregard the basic and historic power of the states to prescribe their own local court procedures (subject only to a broad constitutional prohibition in the Fourteenth Amendment against the abuse of that power) but it would introduce extraordinary confusion and uncertainty into local criminal procedure where clarity and certainty are the primary essentials of law and order."

The Bute case, supra, was decided 19 April 1948. Four of the Justices dissented from the majority opinion.

On 14 June 1948 the United States Supreme Court decided the case of Wade v. Mayo, as State Prison Custodian of the State of Florida, 334 U.S. 672, 68 S.Ct. 1270, 92 L.Ed. 1647, four of the Justices dissenting.

After imprisonment on an unappealed conviction in a Florida court the appellant filed a habeas corpus petition in a state court on the ground that the trial court's refusal to appoint counsel for him was a denial of due process. Prior to his trial in the Florida Circuit Court appellant had requested that the court appoint counsel for him, claiming he was financially unable to employ one himself. The highest state court, 158 Fla. 264, 28 So.2d 585, affirmed denial of the petition on its merits as was made apparent by a subsequent decision.

A federal district court nearly a year later granted a petition for a writ of habeas corpus on the ground that refusal to appoint counsel for Wade at the trial deprived him of his constitutional right to due process of law. The judgment of the Federal District Court was reversed by the Circuit Court of Appeals for the Fifth Circuit, 158 F.2d 614, on the ground that the Fourteenth Amendment does not require the appointment of counsel in noncapital cases unless the state law so requires.

The Supreme Court of the United States reversed the decision of the Circuit Court of Appeals for the reason that the District Court's determination that under the circumstances the petitioner had a constitutional right to the assistance of counsel was not clearly erroneous.

Writing to the instant question (right to counsel) Mr. Justice Murphy stated [334 U.S. 672, 68 S.Ct. 1275]:

"As to the merits of Wade's constitutional claim, the District Court made the following findings after a hearing at which Wade and the trial judge gave testimony:

" 'The Court has heard the evidence of the respective parties and the argument of their counsel. It appears that petitioner, at the time of his trial in the Criminal Court of Record of Palm Beach, Florida, was eighteen years old, and though not wholly a stranger to the Court Room, having been convicted of prior offenses, was still an inexperienced youth unfamiliar with Court procedure, and not capable of adequately representing himself. It is admitted by the Judge who presided at petitioner's trial on March 6, 1945 that petitioner in open Court, before trial commenced, requested said Judge to appoint counsel for him, but the request was denied and petitioner placed on trial without counsel. * * * The denial of petitioner's request in the circumstances here involved constitutes a denial of due process, contrary to the 14th Amendment of the Federal Constitution, which renders void the judgment and commitment under which petitioner is held. * * *'

"As the Circuit Court of Appeals pointed out, the evidence at the hearing before the District Court further showed that during the progress of the trial Wade (a) was advised by the trial judge of his right to challenge jurors and excuse as many as six without reason, a right which he did not exercise; (b) was afforded an opportunity, which he accepted, to cross-examine state witnesses; (c) took the stand and testified in his own behalf; and (d) was offered the privilege of arguing his case to the jury but declined, as did the prosecuting attorney.

"We are not disposed to disagree with the findings and conclusion of the District Court. Its determination was a purely factual one to the effect that Wade was an inexperienced youth incapable of adequately representing himself even in a trial which apparently involved no complicated legal questions. This is a judgment which is peculiarly within the province of the trier of facts, based upon personal observation of Wade. And we do not find that the District Court's determination was clearly erroneous.

"There are some individuals who, by reason of age, ignorance or mental capacity are incapable of representing themselves adequately in a prosecution of a relatively simple nature. This incapacity is purely personal and can be determined only by an examination and observation of the individual. Where such incapacity is pres-

ent, the refusal to appoint counsel is a denial of due process of law under the Fourteenth Amendment.

"The Circuit Court of Appeals was therefore in error in reversing the District Court's judgment. It was also in error in assuming that the failure to appoint counsel in a non-capital case in a state court is a denial of due process under the Fourteenth Amendment only if the law of the state requires such an appointment. To the extent that there is a constitutional right to counsel in this type of case it stems directly from the Fourteenth Amendment and not from state statutes. Betts v. Brady, 316 U.S. 455, 473, 62 S.Ct. 1252, 1261, 86 L.Ed. 1595, [1607]."

This appellant was 54 years of age at the time of the trial below. He made no request for the appointment of counsel, nor is there any showing in the record that he was financially unable to employ counsel. It is inferable from the evidence presented that appellant's lack of counsel in the trial below resulted from his intention to conduct his defense according to his own theories and ideas. Certainly the pleadings filed by this appellant in the proceedings below, some of which were prepared solely by the appellant, and his conduct of his defense, evince a knowledge of legal procedure and proceedings strongly tending to establish his competence to "face it alone, unaided by an expert in the law."

We therefore conclude that the court below did not err in overruling appellant's motion for a new trial on the ground that he was denied due process of law under the Fourteenth Amendment to the United States Constitution because he was not represented by counsel in the trial below.

■ It is clear that in so far as our statutes and decisions have operative effect no error resulted from the fact that this appellant was not represented by counsel in the proceedings below, for it has for many decades been the law of this State that counsel must be provided for a defendant only if he has been indicted for a capital offense, and is unable to employ coun-

sel. In that event the court must then appoint counsel for him. See Section 318, Title 15, Code of Alabama 1940 and amendment, and innumerable cases annotated thereunder.

Other than the Code section above, which also provides for compensation for the counsel so appointed in capital cases, there are no statutory provisions in this State authorizing the trial court to supply counsel to defendants.

■ Appellant also assigns as one of the grounds for his motion for a new trial certain remarks made by the Solicitor in addressing the jury. In this connection the record shows the following:

"The Court: Mr. Solicitor, don't refer to the fact that the witness didn't take the stand in his own defense; he has a right to do that or not to do it.

"The Defendant: That's the second time, isn't it?

"The Court: I am voluntarily coming in there, Mr. Smith, and the solicitor, in his enthusiasm I might say, just overlooked it. He don't mean to. Go ahead."

The fragmentary picture of this occurrence presented by the record would in itself make a rational review most difficult, if not impossible, in that the remarks of the Solicitor can only be inferred. However, no objection was interposed to this argument. The court did, ex mero motu, intervene and caution the Solicitor. To be available as reversible error the remarks of counsel complained of must be objected to, in the court below, the objection overruled, and exception reserved. Cunningham v. State, 19 Ala.App. 171, 95 So. 825; Cross v. State, 68 Ala. 476.

Examination of this record convinces us that the learned trial judge was liberal in protecting the rights of this appellant, as indeed was the Solicitor prosecuting this case. We have found no error materially affecting the substantial rights of the accused. The cause is therefore due to be affirmed, and it is so ordered.

Affirmed.