**BUCHANAN v. O'BRIEN.**

No. 4467.

United States Court of Appeals
First Circuit.

May 2, 1950.

Rehearing Denied May 25, 1950.

---

John F. Buchanan, pro se.

Lenahan O'Connell, Assistant Attorney General (Francis E. Kelly, Attorney General, and William F. Marcella, Boston, Mass., on the brief), for appellee.

Before MAGRUDER, Chief Judge, and MARIS (by special assignment) and WOODBURY, Circuit Judges.

MAGRUDER, Chief Judge.

On March 5, 1930, appellant John F. Buchanan was found guilty by a jury in the Superior Court for Middlesex County, Massachusetts, under an indictment charging armed robbery. Ch. 265, § 17, Mass.Gen. L.(Ter.Ed.). Since he was charged in the indictment and found by the jury to be an "habitual criminal" within the meaning of Ch. 279, § 25, he was by mandate of law sentenced to imprisonment in the state prison for life, the maximum penalty for the,

offense under indictment. Appellant is now serving that sentence in the custody of respondent, the warden of Massachusetts State Prison.

Buchanan filed in the court below a petition for a writ of habeas corpus on November 2, 1949. The petition set forth that when Buchanan was brought to trial for the offense of armed robbery, he made known to the Superior Court "that he was without funds with which to obtain counsel, that he had tried his best to enlist the aid of relatives and friends to no avail and would the Court, in consideration of the seriousness of the charges against him, appoint counsel to assist, advise, direct, and help him"; that the prosecuting attorney objected that "inasmuch as this was not a capital case and as the co-defendant, James Vincent, had counsel the trial should proceed"; that thereupon counsel for the said James Vincent pointed out to the court that his client's interests "were greatly dependent upon the evidence given by your petitioner, and accordingly, he could not and would not in justice to his client represent your petitioner in any capacity"; that the court directed the trial to proceed without appointing counsel for Buchanan. The petition also recited various occasions in the course of the trial when advice and assistance of competent counsel were particularly needed, including the allegation that the court, despite Buchanan's statement that he did not wish to testify, directed him to take the stand. It is alleged that petitioner, "in his twenties, with a fifth grade education, unrepresented by counsel," and "being completely unfamiliar with procedural requirements,". was at a loss on these occasions to know how to proceed to protect his rights from serious prejudice. Under the circumstances set forth, the petition charges that the refusal of the Superior Court to appoint counsel at petitioner's request was a denial of due process of law under the Fourteenth Amendment of the U. S. Constitution.

The court below granted an application by petitioner for leave to proceed *in forma pauperis,* an affidavit of poverty having been filed. However, the court denied a further petition by Buchanan for a writ of habeas corpus *ad testificamdum,* to enable petitioner to be present in person to give testimony at the hearing in support of his petition for a writ of habeas corpus, and to present argument on his own behalf, he being without counsel. The court did not issue a writ of habeas corpus, nor did it issue a show cause order. Instead, from the face of the petition and from the court's inspection of the original papers on file in the state court, the court below concluded "that the petitioner here has not exhausted his State remedies. He has available what, in all probability, is a proper remedy to present the federal question, namely, a petition for a writ of error under the provisions of Massachusetts General Laws (Ter. Ed.) Ch. 250, sec. 9." Therefore the court entered its order that the petition for writ of habeas corpus be dismissed without prejudice. The district judge signed a certificate of probable cause for the allowance of an appeal to this court, in accordance with the requirement of 28 U.S.C.A. § 2253, and Buchanan duly appealed.

■ The allegations of the present petition for habeas corpus, which are all we have to go on, would seem to make out a *prima facie* case of denial of constitutional right. See Williams v. Kaiser, 1945, 323 U.S. 471, 474, 65 S.Ct. 363, 89 L.Ed. 398. From the face of the petition it could hardly be said that petitioner, if accorded a hearing, would be unable to establish his case. True, it has been authoritatively held that in non-capital cases the due process clause of the Fourteenth Amendment does not in all cases absolutely and inflexibly require a state to supply counsel to an indigent accused, in contrast with the mandate of the Sixth Amendment, under which counsel must be furnished to an indigent defendant prosecuted in the federal court in every case, whatever the circumstances. Betts v. Brady, 1942, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595; Foster v. People of State of Illinois, 1947, 332 U.S. 134, 67 S. Ct. 1716, 91 L.Ed. 1955; Bute v. People of State of Illinois, 1948, 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986; Gryger v. Burke, 1948, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683. But as those cases indicate, and as other cases have held, the question of constitutional right turns very much upon the

circumstances of the particular case—the age of the accused, his education, intelligence and experience, whether the offense charged was simple of comprehension or complicated, the occurrences at the trial, such as how effectively the trial judge interposed to protect the rights of the accused, and whether or not the proceeding turned upon intricacies of substantive law or procedure. Such examination of the particular facts may reveal that the accused "was handicapped by lack of counsel to such an extent that his constitutional right to a fair trial was denied." Gibbs v. Burke, 1949, 337 U.S. 773, at page 781, 69 S.Ct. 1247, 1251. This is the ultimate criterion. Uveges v. Pennsylvania, 1948, 335 U.S. 437, 69 S.Ct. 184; Wade v. Mayo, 1948, 334 U.S. 672, 683, 684, 68 S.Ct. 1270, 92 L.Ed. 1647; Townsend v. Burke, 1948, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690; De Meerleer v. People of State of Michigan, 1947, 329 U.S. 663, 67 S.Ct. 596, 91 L.Ed. 584; Rice v. Olson, 1945, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 637; Tomkins v. State of Missouri, 1945, 323 U.S. 485, 65 S.Ct. 370, 89 L.Ed. 407; Williams v. Kaiser, 1945, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398; Smith v. O'Grady, 1941, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859. See also United States ex rel. Kennedy v. Burke, 3 Cir., 173 F.2d 544, and on second appeal, 3 Cir., 1949, 176 F.2d 96. The petition here alleges that Buchanan made known to the Superior Court that he felt the need of counsel and had been unable to procure one and that he asked the court to appoint counsel to assist him. In that respect the case is to be sharply differentiated from Bute v. Illinois, supra, 333 U.S. at pages 672-673, 68 S.Ct. 763, 92 L.Ed. 986. This is a circumstance which would have to be weighed, in conjunction with the other facts in the case, in determining whether the petitioner was so handicapped by lack of counsel that his constitutional right to a fair trial was denied.

██ In 28 U.S.C.A. § 2254 it is provided that an application to a federal court for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process *or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner."* [Italics added.] The Reviser's Notes to this section state that it is merely declaratory of existing law as affirmed in Ex parte Hawk, 1944, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572. In that case the Court said, 321 U.S. at page 118, 64 S.Ct. at page 450: "But where resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raised, either because the state affords no remedy, * * * or because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate, * * * a federal court should entertain his petition for habeas corpus, else he would be remediless."

Mindful of the requirements of 28 U.S. C.A. § 2254, the petitioner here has set forth in detail his unsuccessful efforts to obtain vindication of his federal constitutional claim in the courts of the state, first by way of habeas corpus and later by writ of error. The present record contains, as appendices to the petition for habeas corpus, certified copies of the docket entries of the habeas corpus and writ of error proceedings in the state court, which petitioner brought before resorting to the federal court. Since the significance of some of these entries was not entirely clear to us, we ourselves have examined the original papers on file in the state court, as did the court below.

On April 7, 1943, Buchanan filed in the Supreme Judicial Court a petition for a writ of habeas corpus, raising the federal constitutional question predicated upon petitioner's conviction without benefit of counsel. In accordance with established practice, the petition came before a single justice of the Supreme Judicial Court. On April 8, 1943, the single justice entered an order denying process. On October 11, 1943, the single justice filed his report to the full bench reciting his ruling "that on the facts set forth in the petition no remedy

by habeas corpus proceedings is open to the petitioner. Gen.Laws (Ter.Ed.) Chap. 248, section 1." If petitioner had complied with the further procedural steps, the question of law would thus have come before the full bench for decision, upon the report of the single justice. Buchanan filed an affidavit of poverty on October 27, 1943, accompanied by a motion for a waiver of prepayment of estimated costs for the preparation and printing of the record. Ch. 231, § 135, Mass.Gen.L.(Ter.Ed.). This motion was denied by the single justice on November 1, 1943. Technically, the habeas corpus proceeding remains on the docket of the Supreme Judicial Court; but even if it should come on to be heard by the full bench, it seems likely that the Supreme Judicial Court would not reach the constitutional question sought to be raised but would affirm the ruling of the single justice that as a matter of state procedure a writ of habeas corpus is not the proper remedy. See Ch. 248, Mass.Gen.L.(Ter.Ed.) § 1; John O'Leary, Petitioner, 1950, 325 Mass. 179, 89 N.E.2d 769.

On February 17, 1944, Buchanan filed in the Supreme Judicial Court a petition for a writ of error pursuant to the provisions of Ch. 250, Mass.Gen.L.(Ter.Ed.), particularly §§ 1, 2, 9, and 10. This was undoubtedly an appropriate procedure for obtaining a review by the Supreme Judicial Court of the judgment of conviction and a determination of the federal constitutional question sought to be presented, as is apparent from Allen v. Commonwealth, 1949, 324 Mass. 558, 87 N.E.2d 192. In that case, sixteen years after Allen had been convicted of murder in the second degree and sentenced to life imprisonment, he sued out a writ of error in the Supreme Judicial Court and procured an adjudication of his claim that he had been tried and convicted without benefit of counsel in violation of his rights under the Fourteenth Amendment.

Buchanan's petition for writ of error came before a single justice of the Supreme Judicial Court, who on February 28, 1944, ordered the issuance of the writ. On the same day the single justice entered an order denying petitioner's motion for a writ

of habeas corpus ad testificandum. The formal return of the Chief Justice of the Superior Court was filed March 22, 1944. On April 4, 1944, the Commonwealth filed its answer to the writ of scire facias. The proceeding dragged on, without anything happening which needs now to be recited, until January 5, 1948, on which day the single justice entered an order for judgment affirming the 1930 judgment of conviction in the Superior Court. So far as appears, this order was issued without any hearing having been had on matters of fact or law bearing on the merits of Buchanan's federal constitutional claim, contrary to what was done in Allen v. Commonwealth, supra. On January 13, 1948, petitioner filed exceptions to the order for judgment and a motion for findings of fact and of law. Petitioner failed to notify the Attorney General of the filing of such exceptions within the time limit prescribed by Ch. 231, § 113. Accordingly, on May 10, 1948, the Attorney General filed a motion to dismiss the bill of exceptions, which motion was allowed by the single justice on May 19, 1948. The single justice having chosen not to report the case to the full bench for decision, the Commonwealth filed a motion on May 21, 1948, for entry of judgment. On May 26, 1948, the formal judgment was entered, affirming the judgment of the Superior Court. Although the single justice filed no memorandum of decision, we must assume that the adverse judgment which he ordered to be entered was based upon the view that on the face of the petition for writ of error and the other formal papers on file, Buchanan's claim that he had been denied due process under the Fourteenth Amendment was without merit. Petitioner having slipped up on the local procedural requirement of giving notice to the Attorney General of the filing of his exceptions to the order of the single justice for judgment, the procedural door to the full bench was shut in his face, since the single justice did not of his own motion report the case to the full bench.

We note here that Buchanan could not have obtained from the Supreme Court of the United States a writ of certiorari to review the judgment entered by the single

justice of the Supreme Judicial Court. See Gorman v. Washington University, 1942, 316 U.S. 98, 62 S.Ct. 962, 86 L.Ed. 1300. Therefore his failure to apply for certiorari at that point is not in itself an obstacle to a subsequent application for a writ of habeas corpus in a federal district court, Darr v. Burford, Warden, 1950, 70 S.Ct. 587, being obviously inapplicable.

After some hesitation, we have come to the conclusion that the district court committed no error in denying the petition without prejudice, leaving petitioner to the expedient of filing in the Supreme Judicial Court another petition for a writ of error. Before a federal court may exercise the delicate jurisdiction of interfering with state criminal processes, the burden is on the petitioner, under 28 U.S.C.A. § 2254, to show that he has exhausted the remedies available in the courts of the state, or that there is either an absence of available state corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner. In a new writ of error proceeding in the state court, it is conceivable that under local law the matter would be deemed to be *res judicata*, Buchanan having obtained an adverse ruling on the same question in an earlier proceeding for writ of error, in which the single justice entered judgment affirming the conviction and in which Buchanan failed to perfect a review by the full bench of the Supreme Judicial Court. On the other hand, the state court may hold that where a petitioner claims an unconstitutional deprivation of liberty, the doctrine of *res judicata* is not strictly applicable in successive writ of error proceedings any more than in habeas corpus proceedings,[1] the writ of error being the remedial writ which in Massachusetts largely performs the functions of a writ of habeas corpus under the federal system. We find no controlling precedent in the Supreme Judicial Court on the point, in the absence of which we cannot know for sure what would be the outcome of another writ of error proceeding. Certainly until Bu-

chanan tries it out we have no basis to assume that a writ of error would now be unavailing to obtain an adjudication in the state courts on Buchanan's federal claim. Cf. McGarty v. O'Brien, Warden, 1 Cir., 1950, 180 F.2d 987.

It may be objected that Buchanan has already sought to assert his federal claim by appropriate state procedure, and that having obtained an adverse ruling by a single justice of the Supreme Judicial Court he could not, as a practical matter, have pursued his claim to the highest state tribunal, because in his impoverished condition he would have been unable to prepay the costs of preparing and printing the record for review by the full bench; that this obstacle would have blocked him even if he had not made the procedural error in the earlier writ of error proceeding of failing to give the Attorney General timely notice of the filing of his exceptions to the order of the single justice. If it were true that petitioner could not in any way obtain an adjudication of his claim by the full bench, because of his financial inability to bear the cost of preparing and printing the record, this would probably constitute a circumstance "rendering such process [i. e., a theoretical right to review by the full bench] ineffective to protect the rights of the prisoner" within the meaning of 28 U.S.C.A. § 2254. It may well be that the normal procedure of review by the full bench on a printed record of the proceeding before the single justice, as provided in Ch. 231, § 135, Mass.Gen.L.(Ter.Ed.), cannot be had without prepayment by the litigant to the clerk of the estimated cost of printing. But if in the writ of error proceeding Buchanan had applied to the Supreme Judicial Court for leave as a pauper to present his exceptions to the full bench on a typewritten record, or even on the original papers, it would be gratuitous for us to assume, in the absence of authoritative state precedent, that that court would have deemed itself so lacking in inherent power as to be helpless to afford a review in this manner to an indigent petitioner making a serious claim of

---

1. "All the authorities agree that *res judicata* does not apply to applications for habeas corpus. The courts must be kept open to guard against injustice through judicial error." Darr v. Burford, Warden, 1950, 70 S.Ct. 587, 596.

unconstitutional deprivation of liberty.[2] We are particularly unwilling to make any such assumption in view of the statutory definition of the august functions of the Supreme Judicial Court found in Ch. 211, § 3, Mass.Gen.L.: "The supreme judicial court shall have general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided; and it may issue writs of error, certiorari, mandamus, prohibition, quo warranto and all other writs and processes to such courts and to corporations and individuals which may be necessary to the furtherance of justice and to the regular execution of the laws." Under the circumstances, the position we should take at this stage is well indicated in Ex parte Elmer Davis, 1943, 318 U.S. 412, 63 S.Ct. 679, 87 L.Ed. 868.

The judgment of the District Court is affirmed.

2. See Rule 1 of the Rules for the Regulation of Practice before the Full Court of the Supreme Judicial Court, as amended February 1, 1943: "(A) In addition to the number of copies of the record of the court below required by G.L. (Ter. Ed.) c. 231, § 135, the clerk or other appropriate official of the court below shall transmit to the full court ten copies thereof. Copies of the record of the court below shall satisfy the following specifications, *unless the court or a justice shall otherwise order*. [Italics added.] They shall be printed upon opaque paper having a dull surface, in clear type not smaller than 11-point. * * *" Rule 2, after providing the detailed manner in which briefs shall be printed, provides: "Briefs not in substantial compliance with this rule shall not be received, unless the court or a justice shall otherwise order."